Richard J. McCord, Esq.
Robert D. Nosek, Esq.
CERTILMAN BALIN ADLER & HYMAN, LLP
Counsel to the Chapter 7 Trustee,
Richard J. McCord, Esq.
90 Merrick Avenue
East Meadow, NY 11554
(516) 296-7000

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In Re:

SID BOYS CORP. d/b/a Kellogg's Diner,

                               Debtor,
-----------------------------------------------------------------X
RICHARD J. McCORD, ESQ., as Chapter 7
Trustee of the Estate of Sid Boys Corp. d/b/a Kellogg's
Diner,

                               Plaintiff,

        -against-

LAW OFFICES OF RACHEL L. KAYLIE, P.C. and
RACHEL L. KAYLIE, ESQ.,

                               Defendants.
-----------------------------------------------------------------X

Chapter 7
Case No. 21-42207-ess

**COMPLAINT**

Adv. Proc. No. 24-_____-ess

Plaintiff, Richard J. McCord, Esq., the Chapter 7 Trustee (the "Plaintiff" or "Trustee") of

the bankruptcy estate of Sid Boys Corp., d/b/a Kellogg's Diner, by and through his attorneys,

Certilman Balin Adler & Hyman, LLP, complaining of the defendants, Law Offices of Rachel L.

Kaylie, P.C. (the "Kaylie Firm") and Rachel L. Kaylie, Esq. ("Kaylie," and collectively with the

Kaylie Firm, the "Defendants"), respectfully alleges and sets forth to this Court as follows:

## NATURE OF ADVERSARY PROCEEDING

1.      This Complaint is brought pursuant to 11 U.S.C. §§105(a), 365, 541, 542, General

8220269.2

Common Law, New York State Law and Federal Rules of Bankruptcy Procedure 6006, 6009 and 7001.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§157 and 1334.

3.      Venue of this case and of this Adversary Proceeding is proper pursuant to 28 U.S.C. §1409.

4.      This Adversary Proceeding is a core proceeding as defined in 28 U.S.C. §§157(b)(1), 157(b)(2)(A), 157(b)(2)(E) and 157(b)(2)(O).

## PARTIES

5.      Plaintiff, Richard J. McCord, Esq., is the permanent Chapter 7 Trustee of the Estate of Sid Boys Corp. d/b/a Kellogg's Diner (the "Debtor"), duly appointed pursuant to 11 U.S.C. § 704, qualified, and has standing to commence this action on behalf of the Debtor.

6.      The Kaylie Firm was and at all times relevant is a professional corporation organized under the laws of the State of New York and engaged in the practice of law in the State of New York.

7.      Kaylie was and at all times relevant is a duly licensed attorney and counsel at law of the State of New York.

8.      Kaylie was and at all times relevant was and still is a resident of the State of New York.

9.      Kaylie is and was at all times relevant admitted to practice law in the United States District Court for the Eastern District of New York.

10.     Kaylie is and was at all times relevant an attorney who practiced before the United

8220269.2

States Bankruptcy Court for the Eastern District of New York.

11.    Kaylie is and was at all times relevant the shareholder of the Kaylie Firm.

12.    Kaylie is and was at all times relevant an officer of the Kaylie Firm.

13.    Kaylie is and was at all times relevant a principal of the Kaylie Firm.

14.    Upon information and belief, Defendants have, and at all times hereinafter mentioned had, an office located in the State of New York from which office Defendants did, and does, regularly and continually transact and conduct the practice of law and/or other business.

## BACKGROUND FACTS

**Filing of Debtor's Chapter 11 Case**

15.    On August 28, 2021 (the "Petition Date"), the Debtor filed a voluntary petition [ECF Doc. No. 1] (the "Petition") for relief pursuant to Chapter 11 of Title 11 of the United States Code (U.S.C. §101 et. seq., "Bankruptcy Code") by its counsel, the Kaylie Firm, in the United States Bankruptcy Court, Eastern District of New York at Brooklyn (the "Court").

16.    As part of its filing, the Debtor elected to file as a "small business debtor" as that term is defined in Section 101(51D) of the Bankruptcy Code by checking the appropriate corresponding box on the Petition.

17.    The Debtor declined to proceed under Subchapter V of Chapter 11 of the Bankruptcy Code.

18.    Upon the filing of the Petition, the Clerk of the Court assigned case number 21-42207-ess to the Debtor's Chapter 11 bankruptcy case (the "Case").

19.    From the Petition Date until this Case was converted to one under chapter 7 of the Bankruptcy Code, the Debtor remained in possession of its property and continued in the management and operation of its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107

3

and 1108.

20.     On April 11, 2022, 514 Fioto Property Corp. (the "Landlord") and 518 Metropolitan Avenue Corp. ("518 Metropolitan," and collectively with the Landlord, the "Prior Owner Entities") filed a motion to convert the Debtor's case to one under chapter 7 of the Bankruptcy Code (the "Conversion Motion"). ECF Doc. No. 44.

21.     In ruling on the Conversion Motion, on January 30, 2023, the Court entered an order [ECF Doc. No. 151] (the "Conversion Order") converting this Case to one under Chapter 7 of the Bankruptcy Code.

22.     Upon entry of the Conversion Order, the Debtor was no longer a debtor in possession in possession of its property and was not permitted to continue in the management and operation of its business.

23.     By Notice of Appointment of Trustee dated February 1, 2023 [ECF Doc. No. 153], the Plaintiff Trustee was duly appointed the Chapter 7 Trustee ("Trustee") of the Debtor's bankruptcy estate, has qualified and is and has been the permanent trustee in this Case.

24.     By Order of this Court entered on February 16, 2023 [ECF Doc. No. 161], the law firm of Certilman Balin Adler & Hyman, LLP, was retained as general bankruptcy counsel to the Trustee.

25.     By order of the Court entered on February 16, 2023 [ECF Doc. No. 163] (the "721 Order"), the Trustee was authorized to operate the Business under Section 721 of the Bankruptcy Code.

**Debtor's Retention of Kaylie Firm**

26.     At all times relevant herein, the Defendants held themselves out to the general public as being possessed of the skill and knowledge of the profession of the practice of law.

4

27.     At all times relevant herein, the Defendants held themselves out to Irene Siderakis ("Siderakis"), the principal of the Debtor, as being experienced in the bankruptcy law of the United States of America and, in particular, Chapter 11 bankruptcy.

28.     The Debtor first retained the Kaylie Firm prior to the Petition Date by a retainer letter dated July 8, 2021 (the "Engagement Letter").

29.     The Engagement Letter was signed by Kaylie on behalf of the Kaylie Firm.

30.     The Engagement Letter was countersigned by the Debtor through Siderakis as the President of the Debtor.

31.     The Debtor retained the Defendants for "the preparation, commencement and processing of a proceeding under chapter 11 of the United States Bankruptcy Code." *See* Engagement Agr. 1.

32.     On or about July 29, 2021, the Debtor transferred to Defendants the sum of twenty-five thousand ($28,000.00) dollars as a retainer against fees and expenses to be billed (the "Retainer"). *See Amended Retention Application* [ECF Doc. No. 31] (the "Retention Application") ¶ 17(b).

33.     Upon information and belief, Defendants accepted Debtor's Retainer and agreed to render and did thereafter render to Debtor legal services and representation in connection with, <u>inter</u> <u>alia</u>, preparation for and the conduct of the pending bankruptcy proceeding.

34.     The Retainer Agreement created an attorney-client relationship between the Debtor and the Defendants.

35.     Defendants thereupon became obligated to and had a duty to provide to Debtor proper professional services and such legal representation as is customarily to be provided by attorneys at law with respect to legal advice and representation concerning bankruptcy

8220269.2

proceedings, the Debtor's bankruptcy estate, and the Debtor's rights, duties and obligations as a debtor in possession.

36.     Subsequent to the Petition Date, by and through the amended Retention Application filed on November 17, 2021, Debtor sought the authorization of the Court to retain the Kaylie Firm as its general bankruptcy counsel to provide legal services and representation to Debtor in connection with its bankruptcy proceeding.

37.     The Retention Application sets forth many areas which the Debtor requested that the Defendants render to the Debtor, including:

- Advising the Debtor with respect to its powers and duties as debtor and debtor in possession in the continued operation of its business[;]

- […] advising and consulting on the conduct of the case, including all legal and administrative requirements of operating in Chapter 11[;]

- [t]aking all necessary action to protect and preserve the Debtor's estate[;]

- [p]reparing and negotiating on the Debtor's behalf any chapter 11 plans, disclosure statements, and any related agreements and/or documents, and taking any necessary action on behalf of the Debtor to obtain confirmation of any such plan(s)[;]

- [a]dvising the Debtor in connection with any sale of assets or other transactions[;]

- [p]erforming other necessary legal services and providing other necessary legal advice to the Debtor in connection with this Chapter 11 Case; and

- [a]ppearing before this Court … and the United States Trustee, and

protecting the interests of the Debtor's estate before such court and the

United States Trustee."

Ret. App. ¶ 9

38.　A copy of the Engagement Agreement was annexed to the Retention Application.

39.　Defendants asserted in its declaration in support of the Retention Application that "[s]ince its retention, the [Defendants] has become uniquely familiar with the Debtor's affairs as well as many of the potential legal issues that might arise in the context of the Debtor's Chapter 11 Case."  Kaylie Dec. ¶ 4

40.　Defendants asserted that they "believe[d] that [they] has assembled a highly qualified team of professionals and paraprofessionals to provide services to the Debtor during this case and is thus qualified to represent the Debtor."  *Id.* at ¶ 5.

41.　Kaylie further asserted on her own behalf that "I have more than 25 years of experience in consumer bankruptcy for debtors and in commercial bankruptcy for creditor representation, and related matters."  *Id.* at ¶ 6.

42.　She further asserted that "I am the attorney with primary responsibility on the [Kaylie Firm]" engagement.  *Id.*

43.　"Other professionals and paraprofessionals in my offices practice, and in other practice areas, as appropriate, will participate in the representation of the Debtor in this Chapter 11 Case.  *Id.* at ¶ 7.

44.　By Order of the Court entered on January 13, 2022 [ECF Doc. No. 31], the Retention Application of the Defendants to become counsel to the Debtor was approved by the Court.

45.　Subsequent to the Petition Date, continued to provide legal advice and rendered

8220269.2

legal services to Debtor in connection with its bankruptcy estate and issues surrounding and involving the bankruptcy proceeding.

46. The attorney-client relationship between the Debtor and the Defendants was reaffirmed when the Court entered the Retention Order which approved the Debtor's retention of the Defendants as its attorney in the Case.

47. At all times relevant hereto, Defendants owed a duty to Debtor to exercise such skill, prudence and diligence commonly possessed and exercised by members of the legal community, to represent Debtor in a competent manner and to provide accurate and proper legal advice in connection with the matter in which Defendants were retained.

**Debtor's Retention of Morgan & Bley, Ltd.**

48. On June 23, 2022, the Debtor filed an application to retain Morgan & Bley, Ltd. (the "Morgan Firm") as "its additional counsel to the Chapter 11 estate…pursuant to section 327(a) of the Bankruptcy Code[.]" [ECF Doc. No. 71] (the "Morgan Retention Application").

49. According to the Debtor, the first contact with the Morgan Firm occurred on or about June 13, 2022 "to discuss appearing as additional and/or substitute counsel in its ongoing Chapter 11 Case." *See* Morgan Retention Application ¶ 6.

50. The Morgan Retention Application was made on an emergency basis. *See* Morgan Retention Application ¶ 8, n. 1.

51. By order entered on August 18, 2022 [ECF Doc. No. 85], the Court authorized the Morgan Firm's retention by the Debtor effective as of June 13, 2022.

**Debtor's Business**

52. Debtor, at the time the Petition was filed and throughout the bankruptcy proceeding, owned, and, until the conversion, operated a 24-hour diner business with its principal place of

8220269.2

business in the Borough of Brooklyn, City of New York, State of New York (the "Business").

53.     The Debtor leased non-residential real property and a building appurtenant thereon located at and known as 518 Metropolitan Avenue, Brooklyn, New York 11211 (the "Premises") pursuant to a Net Net Lease, dated as of September 19, 2013, by and between the Debtor, as tenant, and the Landlord, as landlord, from and on which it conducted its Business.

54.     The Lease provided for a thirty (30) year initial term beginning October 1, 2013 and expiring on September 30, 2043.

55.     On January 30, 2023, the Debtor's bankruptcy proceeding was converted from a Chapter 11 proceeding to a proceeding pursuant to Chapter 7 of the United States Bankruptcy Code.

56.     Subsequent to the conversion of this case to one under Chapter 7 of the United States Bankruptcy Code, the Business was closed for business for several weeks.

57.     At the time of the entry of the Conversion Order, the Business employed approximately 48 full time and part time employees.

58.      At the time of the entry of the Conversion Order, the Business owned finished perishable goods intended to sell to the customers of the Business.

59.     At the time of the entry of the Conversion Order, the Business owned finished non-perishable goods that nonetheless had expiration dates.

60.     At the time of the entry of the Conversion Order, the Business owned various perishable ingredients used by the Business to make finished goods to sell to the customers of the Business.

61.     At the time of the entry of the Conversion Order, the Business owned various non-perishable ingredients used by Business to make finished goods that nonetheless had expiration

9

dates.

62.     At the time of the entry of the Conversion Order, the Debtor owed wages to its employees that were unpaid as of the entry of the Conversion Order (the "Pre-Conversion Wages").

63.     At the time of the entry of the Conversion Order, the Debtor owed withholding wages for the Pre-Conversion Wages that were unpaid as of the entry of the Conversion Order (the "Pre-Conversion Taxes").

64.     At the time of the entry of the Conversion Order, the Debtor owed ("Pre-Conversion Goods Debt") various vendors (the "Critical Goods Vendors") that supplied food, beverage, sundry and other items to the Business for food, beverage, sundry and other goods which had been sold and delivered to the Debtor prior to the Conversion Order (the "Pre-Conversion Goods").

65.     The Debtor had preexisting business relationships and accounts with each of the Critical Goods Vendors.

66.     Operation of the Business generated substantial gross revenue for the Business.

67.     Other than from the operation of the Business, the Debtor did not have other lines of business from which it generated gross revenue.

**Bankruptcy Deadlines**

Lease Assumption or Rejection Deadline

68.     Pursuant to Bankruptcy Code Section 365 and Bankruptcy Rule 6006, debtors in possession and trustees in bankruptcy cases possess the right to assume or reject (the "Right to Assume") executory contracts and/or unexpired lease within a specific statutory time period failing which such executory contracts and/or unexpired lease would be deemed rejected by operation of

law.

69.     The Right to Assume is one of the most important rights a debtor in possession or trustee may have in a bankruptcy case particularly if that debtor's business is dependent on an executory contract and/or unexpired lease.

70.     Because executory contracts and unexpired leases are capable of being assigned to third parties, such agreements offer value to a debtor's estate if an assignment can be done.

71.     The statutory deadline by which a debtor must decide whether to assume or reject an executory contracts or unexpired leases is one of the most well-known and critical deadlines in a bankruptcy case.

72.     At the time of the Petition Date, the Bankruptcy Code provided for an initial 210-day period within which the Debtor could assume or reject its non-residential real property leases.

73.     The 210th day after the Petition Date was Saturday, March 26, 2022.

74.     Because of the extension to deadlines provided for under Federal Rule of Bankruptcy Procedure 9006(a)(1)(C), and the 210th day after the Petition Date falling on a Saturday, the statutory deadline by which Debtor was required to assume or reject the Lease was Monday, March 28, 2022 (the "Assumption/Rejection Deadline").

75.     The Debtor never sought to assume or reject the Lease prior to the Assumption/Rejection Deadline.

76.     The Debtor never sought to extend the Assumption/Rejection Deadline prior to that deadline passing.

77.     Failure to assume or reject the Lease by the Assumption/Rejection Deadline resulted in the Lease being deemed rejected by operation of law as of the Assumption/Rejection Deadline.

8220269.2

78.    Only after being advised by Landlord's counsel subsequent to the passage of the Assumption/Rejection Deadline that such deadline had passed did the Defendants take any action in seeking to try and preserve the Lease for the Debtor's Estate and its creditors.

79.    On April 4, 2022, counsel to the Prior Owner Entities emailed a letter to the Defendants (the "Slome April 4 Letter") advising that because the Debtor did not assume or reject the Lease or move for an extension of time before the Assumption/Rejection Deadline, and that "on about, and no later than, March 28, 2022, the time to assume or reject the Lease expired."

80.    A substantial basis for the Prior Owner Entities seeking a conversion of the Debtor's case was Debtor's failure to assume the lease or seek a timely extension of its time to do so.

81.    On or about April 11, 2022, the Defendants e-mailed and mailed to counsel to the Prior Owner Entities a letter responding to the Slome April 4 Letter alleging for the first time that the deadline to assume the Lease was actually any time prior to confirmation of a plan under 11 U.S.C. § 365(d)(2) (the "Integrated Transaction Theory").

82.    On April 19, 2022, the Debtor filed an objection to the Conversion Motion [ECF Doc. No. 46] (the "Objection to Conversion") in which it included a cross-motion asserting the Integrated Transaction Theory (the "Cross Motion") for the first time in the case.

83.    If the Court found that the Integrated Transaction Theory was applicable such that the Lease was part of a larger executory contract, the deadline to assume or reject would have been extended to "any time before the confirmation of a plan."

84.    The Court ordered as part of the Conversion Order "that the Cross Motion is denied without prejudice as moot."

Deadline to File a Plan and Disclosure Statement

12

85.     The deadline for a small business debtor to file a plan to the exclusion of all other persons was one-hundred eighty (180) days after the Petition Date.

86.     The 180th day after the Petition Date was Thursday, February 24, 2022.

87.     The Debtor did not file any plan on or before February 24, 2022.

88.     The Bankruptcy Code permits a debtor extend the plan filing deadline, provided, however, that "the plan and disclosure statement (if any) shall be filed no later than 300 days after the date of the order for relief."  11 U.S.C. § 1121(e)(2).

89.     The 300th day after the Petition Date was Friday, June 24, 2022.

90.     A small business debtor must receive court approval confirming a filed plan not later than 45 days after the plan is filed unless the time for confirmation is extended in accordance with 1121(e)(3)."  11 U.S.C. § 1129(e).

91.     A debtor may extend the 180 day and 300 day deadlines for filing of a plan and the 45 days to confirm a plan after filing only if, among other requirements, "the order extending time is signed before the existing deadline has expired."  11 U.S.C. § 1121(e)(3)(C).

92.     The Debtor filed a Chapter 11 Small Business Disclosure Statement on June 24, 2022.  [ECF Doc. No. 73] (the "Plan").

93.     Unless extended by the Court, the Debtor had until Monday, August 8, 2022 by which to confirm the Plan.

94.     The Debtor filed a Chapter 11 Small Business Plan, dated June 24, 2022, on June 24, 2022.

95.     By application [ECF Doc. No. 77] (the "First Extension Application") filed and served on July 7, 2022, within 45 days after the date the Plan was filed, the Debtor sought to extend its period of time by which to confirm the Plan.

8220269.2

96.     The Court held a hearing on the First Extension Application on July 28, 2022.

97.     On July 28, 2022, the Court entered an order [ECF Doc. No. 83] (the "First Plan Extension Order") extending the Debtor's deadline to confirm the Plan through and including September 22, 2022 (the "First Extended Deadline").

98.     By application [ECF Doc. No. 91] (the "Second Extension Application.") filed and served on August 29, 2022, the Debtor sought to extend further its period of time by which to confirm the Plan.

99.     Prior to the First Extended Deadline, the Debtor and several other parties, including the Prior Owner Entities entered into a stipulation whereby the Debtor could have until October 31, 2022 to confirm the Plan with such extended time being without objection by the counter-parties to the stipulation.

100.    On September 21, 2022, the Court held a hearing on the Second Extension Application and granted the relief sought.

101.    On September 23, 2022, the Court signed and entered an order [ECF Doc. No. 111] (the "Second Plan Extension Order") further extending the period of time by which the Debtor must confirm the Plan to October 31, 2022 (the "Second Extended Deadline").

102.    By application [ECF Doc. No. 119] (the "Third Extension Application," and collectively with the First Extension Application and the Second Extension Application, the "Plan Confirmation Deadline Applications") filed on October 14, 2022, the Debtor sought to extend further its period of time by which to confirm the Plan from October 31, 2022, to December 30, 2022.

103.    On October 31, 2022, the Court held a hearing on the Third Extension Application and granted the relief sought.

8220269.2

104.    On November 3, 2022, the Court signed and entered an order [ECF Doc. No. 124] (the "Third Plan Extension Order," and collectively with the First Plan Extension Order and the Second Plan Extension Orders, the "Plan Extension Orders") further extending the period of time by which to confirm the Plan from October 31, 2022, to December 30, 2022 (the "Third Plan Confirmation Extended Deadline").

105.    For each of the extensions, the Court found that "[i]t is more likely than not that a plan of reorganization will be confirmed within a reasonable period of time."

106.    On November 17, 2022, counsel to the Prior Owner Parties filed a status letter [ECF Doc. No. 132] (the "Slome Nov. 17 Letter") which mentions discussing "in a breakout room session during the hearing about a strict December 30th plan confirmation deadline with the Debtor attempting to confirm a plan with a larger up-front payment than the Debtor's previously filed plan contained." *See* Landlord Nov. 17 Status Letter 1.

107.    The Third Plan Confirmation Extended Deadline passed on December 30, 2022, without the Debtor confirming a plan.

108.    The Third Plan Confirmation Extended Deadline passed on December 30, 2022, without the Debtor obtaining a signed order further extending its time to confirm a plan.

**Withdrawal of Morgan Firm as Debtor's Counsel**

109.    On November 8, 2022, the Morgan Firm filed a motion to withdraw as counsel to the Debtor [ECF Doc. No. 127] (the "Motion to Withdraw").

110.    The Motion to Withdraw was because on "[o]n November 7, 2022, the Debtor notified [the Morgan Firm] its services were terminated and that Kaylie would continue to represent it."

111.    The Motion to Withdraw described the posture of the case at that time as:

> On or about April 11, 2022, the Debtor's largest creditors, 514 Fioto and 518 Metropolitan, sought an order directing the Debtor to immediately surrender the premises at which it operates and to convert the case to a Chapter 7 (the "Landlord Motion"), contending that the time had expired for the Debtor to assume the non-residential real property lease at which the Debtor's business operates. Debtor objected to the motion and filed a cross motion on various grounds. The matter is set for hearing on November 10, 2022 at 2:00 p.m. The deadline to confirm the Debtor's plan of reorganization is December 31, 2022.

Motion to Withdraw ¶ 6.

112.    On November 10, 2022, the Court held a hearing on the Motion to Withdraw and granted that motion.

113.    On December 1, 2022, the Court entered an order granting the Motion to Withdraw.

114.    By order entered July 26, 2023 [ECF Doc. No. 207], the Court awarded final fees and expenses to the Morgan Firm in the amount of $149,515.80 in fees and $484.20 in expenses, for a total award of $150,000.00 (the "Morgan Fee Award").

**Sale of the Diner Business By the Trustee**

115.    By motion filed on June 29, 2023 [ECF Doc. No. 197] (the "Sale Motion"), the Trustee sought approval of the Court to sell the Business.

116.    As part of the Sale Motion, the Trustee sought approval of a stalking horse contract (the "APA") between the Trustee, solely in his capacity as Chapter 7 trustee of the Debtor's estate, as seller and Brooklyn 24 HRS LLC, as purchaser (the "Sale").

117.    The Sale was subject to higher or better offers.

118.    The Sale did not include the Lease.

119.    The Sale was conditioned on the Landlord issuing a new lease to the successful purchaser.

120.    The purchase price for the Business in the APA was $1,750,000, with $500,000.00

8220269.2

of that to be paid in cash and the balance of $1,250,000 paid through a promissory note payable to 518 Metropolitan.

121.     After notice and hearing, the Court considered the Sale Motion and entered an order on July 18, 2023 [ECF Doc. No. 203] (the "Business Sale Order") authorizing the Trustee to complete such sale to the Buyer as purchaser under the terms of the APA, subject to an approved auction process.

122.     By order entered on July 28, 2023, the Court approved the Sale of the Business to the Buyer for $1,825,000.00.

123.     The closing on the Sale occurred on July 31, 2023.

124.     As part of the closing on the Sale, the Landlord and the Purchaser entered into a new lease for the Premises dated July 31, 2023 (the "New Lease").

125.     The New Lease committed the Purchaser to a thirty (30) year term commencing on August 1, 2023 and expiring on July 31, 2053, with no right to renew.

126.     The New Lease does not address the coming lapse of a substantial tax abatement that ends in 2035-36 that will result in the Purchaser having to pay under the Lease an additional approximately $81,000.00 per month in additional real estate taxes.  That equates to an additional approximately $972,000.00 of added expenses a year.

127.     The Landlord was only willing to enter into a new thirty (30) year lease and refused to adjust that new lease to address the substantially increased real estate taxes starting in 2035-36.

128.     Because of the deemed rejection of the Lease, the Landlord gained substantial leverage over the Debtor and the Debtor's estate and any potential purchaser of the Business because it was not obligated to give a new lease.

129.     If the Lease had been assumed, or not been rejected by failure to assume it by the

17

deadline to assume or reject the Lease, the Debtor and its estate would have had more leverage over the Prior Owner Parties in Plan or sale negotiations.

130.    If the Lease had not been rejected, the Trustee would have had the Lease available to him to include in the Sale.

**Rule 2004 Examinations**

131.    On December 20, 2023, pursuant to order of the Court authorizing the Trustee's examination of Kaylie under Federal Rule of Bankruptcy Procedure 2004, the Trustee examined Kaylie under oath, with that examination continued to and concluded on January 5, 2024 (collectively, the "Kaylie Examination").

132.    On December 6, 2023, pursuant to order of the Court authorizing the Trustee's examination of the Debtor's principal, Siderakis, under Federal Rule of Bankruptcy Procedure 2004, the Trustee examined Siderakis under oath (the "Siderakis Examination").

AS AND FOR A FIRST CLAIM AGAINST DEFENDANT

133.    Plaintiff repeats and realleges each and every allegation as set forth in Paragraphs "1" through "132" as though fully set forth herein.

134.    The ordinary reasonable skill and knowledge as a member of the legal profession providing legal counsel in chapter 11 bankruptcy cases include knowledge of important deadlines, including, but not limited to, the deadline by which executory contracts and unexpired leases must be assumed or rejected.

135.    Kaylie admits that having knowledge about the deadline by which a debtor must assume or reject a lease fall within her responsibilities as an attorney for the Debtor.  Kaylie 01.05.2024 Tr. 53:8-15.

136.    Prior to receipt of the Slome April 4 Letter, Defendants did not know what the

18

deadline was by which a debtor must assume or reject a non-residential real property lease.

137.    Prior to the receipt of the Slome April 4 Letter, Defendants did not know what the deadline was by which this Debtor must have assumed or rejected the Lease.

138.    On April 7, 2022 during an in-person meeting with Siderakis, Kaylie admitted to Siderakis that she missed the Debtor's deadline to assume or reject the Lease.  Siderakis Tr. 205:6-15; 206:4-5; 208:24-209:1.

139.    The Defendants' lack of legal skill and knowledge directly resulted in the Defendants having no knowledge of and missing a critical deadline in the Debtor's case regarding the Assumption/Rejection Deadline.

140.    The deemed rejection of the Lease occurred immediately on March 29, 2022.

141.    The Defendants only concocted the Integrated Transaction Theory after the Assumption/Rejection Deadline had passed.  Kaylie 01.05.2024 Tr. 47:3-19.

142.    The Defendants only concocted the Integrated Transaction Theory after receiving the Slome April 4 Letter.  Kaylie 01.05.2024 Tr. 47:12-19.

143.    The Defendants only advised the Debtor about the existence of the Integrated Transaction Theory after the expiration of the Assumption/Rejection Deadline.  Siderakis Tr. 206:2-13.

144.    In responding to the Trustee's question during the Kaylie Examination asking "Did you [Kaylie] tell myself [the Trustee], Ms. Siderakis, or anyone else that you did not timely take steps to assume, reject, or extend time to assume or reject the debtor's commercial lease[, i.e., the Lease]?, Kaylie responded "I believe that is what I said."  Kaylie 12.20.2023 Tr. 52:12-16.

145.    Defendants failed to timely advise Debtor to assume Debtor's Lease, failed to move for an extension of time within which for Debtor to assume Debtor's Lease, failed to timely serve

19

and file an appropriate notice on behalf of Debtor assuming said Lease by March 28, 2022, failed to timely articulate and seek approval of the Integrated Transaction Theory by March 28, 2022 and failed to advise Debtor of the consequences of failing to timely assume the Lease.

146.     Defendants' failure to advise Debtor of the relevant statutory time period to assume the Lease, failure to diligently and timely preserve Debtor's rights therein and Defendants' lack of due diligence in providing adequate legal representation was in direct violation of the Code of Professional Responsibility and the Ethical Canons and Disciplinary Rules established under the laws of the State of New York.

147.     As a direct result of Defendants' negligent, reckless and careless representation of Debtor and Defendants' failure to cause Debtor to timely assume Debtor's Lease, Debtor was forced to defend a conversion motion brought by the Prior Owner Entities in the bankruptcy proceeding to force Debtor to liquidate without benefit of the Lease.

148.     But for Defendants' negligent, reckless and careless representation and Defendants' failure to timely preserve Debtor's rights under prevailing bankruptcy law and to otherwise move to assume Debtor's Lease and confirm a plan, Debtor would not have had to defend a motion to convert the case.

149.     By reason of the foregoing, but for Defendants' negligent, reckless and careless representation, improper legal advice and failure to preserve Debtor's rights to assume the Lease, Debtor was, at a minimum, damaged in an amount to be proven at trial, but in no event less than the legal costs and expenses it incurred in the Case to defend against the Motion to Convert.

## AS AND FOR A SECOND CLAIM AGAINST DEFENDANT

150.     Plaintiff repeats and realleges each and every allegation as set forth in Paragraphs "1" through "149" as though fully set forth herein.

8220269.2

151. As a direct result of the Defendants' negligent, reckless and careless representation, improper legal advice and failure to preserve Debtor's rights to assume the Lease by allowing the Assumption/Rejection Deadline to pass without taking any action whatsoever to extend that deadline, the Debtor hired the Morgan Firm.

152. As a direct result of the Defendants' negligent, reckless and careless representation, improper legal advice and failure to preserve Debtor's rights to assume the Lease by allowing the Assumption/Rejection Deadline to pass without taking any action whatsoever prior to the passing of the Assumption/Rejection Deadline to obtain a ruling from the Court that the deadline to assume or reject should have been the confirmation of plan under the Integrated Transaction Theory, the Debtor hired the Morgan Firm.

153. As a direct result of Defendants' negligent, reckless and careless representation, improper legal advice and failure to preserve Debtor's rights to assume the Lease, the Debtor was forced to incur substantial legal fees and expenses it would not have otherwise had to incur if Defendants had not acted in such a negligent, reckless and careless manner.

154. By reason of the foregoing, but for Defendants' negligent, reckless and careless representation, improper legal advice and failure to preserve Debtor's rights to assume the Lease, Debtor was, at a minimum, damaged in an amount equal to the legal costs and expenses it incurred in the case after the Debtor hired the Morgan Firm and for services provided to correct the negligent, reckless and careless mistakes made by Defendants during their representation of the Debtor in an amount to be proven at trial but no less than $150,000.00.

## AS AND FOR A THIRD CLAIM AGAINST DEFENDANT

155. Plaintiff repeats and realleges each and every allegation as set forth in Paragraphs "1" through "154" as though fully set forth herein.

8220269.2

156.     As a direct result of the Defendants' negligent, reckless and careless representation, improper legal advice and Defendants' failure to preserve Debtor's rights in a timely manner within the statutory time periods, the Debtor's Lease were rejected by operation of law.

157.     Debtor had a valuable leasehold interest in the Lease because the contract rental reserved under said Lease were less than the market rental thereof.

158.     Debtor had a rental advantage at the leased premises equal to the difference between the fair market rental thereof and the rent reserved in said Lease.

159.     By reason of the foregoing, Debtor was, at a minimum, damaged in an amount equal to the difference between the fair market value of its leasehold position had the Lease been assumed and the value of the leasehold position without the Lease in force.

160.     The Debtor suffered substantial losses as a direct result of the rejection of the Lease.

161.     The negligent, reckless and careless representation on the part of Defendants was the direct and proximate cause thereof and a substantial factor is the losses sustained by the Debtor's estate.

162.     By reason of the foregoing, Debtor was deprived of its rental advantage and was damaged thereby in an amount to be determined at trial.

## AS AND FOR A FOURTH CLAIM AGAINST DEFENDANT

163.     Plaintiff repeats and realleges each and every allegation as set forth in Paragraphs "1" through "162" as though fully set forth herein.

164.     Because the Debtor's Estate did not have a Lease to sell, the Debtor's Estate received less consideration in exchange for its Business than it would have received if the Lease had been a part of the Sale.

165.     The negligence, recklessness and careless representation on the part of Defendants

8220269.2

was the direct and proximate cause thereof and a substantial factor is the losses sustained by the Debtor's estate.

166.    By reason of the foregoing, Debtor was deprived of the full measure of consideration for the Sale and was damaged thereby in an amount to be determined at trial.

**AS AND FOR A FIFTH CLAIM AGAINST DEFENDANT**

167.    Plaintiff repeats and realleges each and every allegation as set forth in Paragraphs "1" through "166" as though fully set forth herein.

168.    The ordinary reasonable skill and knowledge as a member of the legal profession providing legal counsel in chapter 11 bankruptcy cases include knowledge of important deadlines, including, but not limited to, the deadline by which a plan must be confirmed in a small business chapter 11 case.

169.    During her Rule 2004 Examination, Kaylie admitted to being aware that there was a deadline to file a plan and disclosure statement for the Debtor.  Kaylie 01.05.2024 Tr. 54:3-55:17.

170.    Kaylie attended the breakout room session referenced in the Slome Nov. 17 Letter which session occurred prior to December 30, 2022.

171.    At all relevant times, Defendants knew about the Plan Confirmation Deadline Applications.

172.    At all relevant times, the Defendants knew about the Plan Confirmation Deadline Orders.

173.    At all times relevant, Defendants knew about the Debtor's deadline by which to confirm a small business plan being December 30, 2022.

174.    The Debtor did not confirm a plan on or prior to the Third Plan Confirmation

8220269.2

Extended Deadline.

175. At no time between the entry of the Order establishing the Third Plan Confirmation Extended Deadline and December 30, 2022, did the Defendants seek on behalf of the Debtor to extend that deadline further.

176. The Defendants' lack of legal skill and knowledge directly resulted in the Debtor missing a critical deadline in the Debtor's case regarding the Plan Confirmation Deadline notwithstanding Defendants having actual knowledge of such deadline as extended by the Court on several occasions.

177. Defendants' failure to diligently and timely preserve Debtor's rights to seek confirmation of a plan and Defendants' lack of due diligence in providing adequate legal representation was in direct violation of the Code of Professional Responsibility and the Ethical Canons and Disciplinary Rules established under the laws of the State of New York.

178. Debtor relied on the information and representation rendered by Defendants as being proper, accurate and lawful and that such information and legal representation included advice that was sound and customarily afforded by attorneys under the particular circumstances of the case and under prevailing bankruptcy law.

179. As a direct result of the Defendants' negligent, reckless and careless representation, improper legal advice and Defendants' failure to preserve Debtor's rights in a timely manner within the statutory time period, Debtor lost the ability to confirm a plan, which resulted in a financial loss to Debtor's bankruptcy estate.

180. As a direct result of the Defendants' negligent, reckless and careless representation, improper legal advice and Defendants' failure to preserve Debtor's rights in a timely manner within the statutory time period to confirm a plan, the Debtor's Lease was rejected, which resulted

24

in a financial loss to Debtor's bankruptcy estate.

181.    The Defendants' negligent, reckless and careless representation, improper legal advice and Defendants' failure to preserve Debtor's rights to assume the Lease and confirm a Plan in a timely manner within the respective statutory time period was the direct and proximate cause of the Debtor's conversion from a Chapter 11 to a Chapter 7.

182.    Such negligence, recklessness and carelessness on the part of Defendants was the direct and proximate cause thereof and a substantial factor in the losses sustained by the Debtor's estate.

183.    But for Defendants' negligent, reckless and careless representation, Debtor could have subleased or assigned the Lease to a third party and/or its Landlord for an amount equal to its leasehold interest and/or sold the Business with the Lease in force.

184.    By reason of Defendants' negligent, reckless and careless representation, Debtor was deprived of the opportunity to assign or sublease the Lease, all to its damage in an amount to be determined at trial.

## AS AND FOR A SIXTH CLAIM AGAINST DEFENDANT

185.    Plaintiff repeats and realleges each and every allegation as set forth in Paragraphs "1" through "184" as though fully set forth herein.

186.    If the Integrated Transaction Theory was found by the Court to be correct, the deadline to assume or reject the Lease would have been any time prior to confirmation of a plan.

187.    Pursuant to prior orders entered in the Case, the time for the Debtor to confirm a plan had been extended by the Court to the Third Plan Confirmation Extended Deadline of December 30, 2022.

188.    Failure to obtain an order of the Court extending the Third Plan Confirmation

8220269.2

Extended Deadline prior to the expiration of the Third Plan Confirmation Extended Deadline resulted in the Lease being rejected as of the expiration of Third Plan Confirmation Extended Deadline.

189.     Failure to assume or reject the Lease by the Third Plan Confirmation Extended Deadline resulted in the Lease being deemed rejected as of the expiration of the Third Plan Confirmation Extended Deadline.

190.     Failure to confirm a plan for the Debtor that included the assumption of the Lease by the Third Plan Confirmation Extended Deadline resulted in the Lease being deemed rejected as of the expiration of the Third Plan Confirmation Extended Deadline.

191.     The Defendants' negligent, reckless and careless representation, improper legal advice and Defendants' failure to preserve Debtor's rights to assume the Lease and confirm a Plan in a timely manner within the respective statutory time period was the direct and proximate cause of the Debtor's conversion from a Chapter 11 to a Chapter 7.

192.     The Defendants' negligent, reckless and careless representation, improper legal advice and Defendants' failure to preserve Debtor's rights to assume the Lease and confirm a Plan in a timely manner within the respective statutory time period was the direct and proximate cause of the Debtor losing the Lease.

193.     By reason of the foregoing, Debtor was deprived of the full measure of consideration for the Sale and was damaged thereby in an amount to be determined at trial.

## AS AND FOR A SEVENTH CLAIM AGAINST DEFENDANT

194.     Plaintiff repeats and realleges each and every allegation as set forth in Paragraphs "1" through "193" as though fully set forth herein.

195.     As a direct and proximate result of Defendants' negligent, reckless and careless

8220269.2

representation which directly caused the conversion of this case, the Debtor's Business was shut down for several weeks.

196.     Prior to the Conversion Date, the Debtor incurred the Pre-Conversion Wages, Pre-Conversion Taxes, Pre-Conversion Goods Debts and other operating costs as post-petition administrative expenses that remained unpaid as of the Conversion Date.

197.     During the period of time which the Business was shut down because of the conversion, it was unable to earn any income.

198.     As a direct and proximate result of Defendants' negligent, reckless and careless representation which directly caused the conversion of this case and the temporary shutdown of the Business, the Debtor's Estate had to use existing cash on hand to pay the Pre-Conversion Wages, Pre-Conversion Taxes, Pre-Conversion Goods Debts and other operating costs in order to keep employees employed and vendors selling goods to the Debtor's Estate so that the Business could reopen.

199.     The use of the money in the Debtor's Estate to pay the Pre-Conversion Wages, Pre-Conversion Taxes, Pre-Conversion Goods Debts and other operating costs incurred prior to the Conversion Date without having any corresponding revenues depleted the Debtor's Estate.

200.     The Defendants' negligent, reckless and careless representation, improper legal advice and Defendants' failure to preserve Debtor's rights to assume the Lease and confirm a Plan in a timely manner within the respective statutory time period was the direct and proximate cause of the depletion of money from the Debtor's Estate thereby directly damaging the Debtor's Estate.

201.     By reason of Defendants' negligent, reckless and careless representation, Debtor was damaged in an amount to be determined at trial.

8220269.2

## AS AND FOR AN EIGHTH CLAIM AGAINST DEFENDANT

202.     Plaintiff repeats and realleges each and every allegation as set forth in Paragraphs "1" through "201" as though fully set forth herein.

203.     As a direct and proximate result of Defendants' negligent, reckless and careless representation which directly caused the conversion of this case and the temporary shutdown of the Business, the Debtor's Estate had to use existing money on hand to pay the cost and expense of wages and taxes incurred by keeping certain employees employed during the period of time the Business was temporarily shut down,

204.     The use of the money in the Debtor's Estate to pay the cost and expense of wages and taxes incurred by keeping certain employees employed during the period of time the Business was temporarily shut down without having any corresponding revenues depleted the Debtor's Estate.

205.     The Defendants' negligent, reckless and careless representation, improper legal advice and Defendants' failure to preserve Debtor's rights to assume the Lease and confirm a Plan in a timely manner within the respective statutory time period was the direct and proximate cause of the depletion of money from the Debtor's Estate thereby directly damaging the Debtor's Estate.

206.     By reason of Defendants' negligent, reckless and careless representation, Debtor was damaged in an amount to be determined at trial.

## AS AND FOR A NINTH CLAIM AGAINST DEFENDANT

207.     Plaintiff repeats and realleges each and every allegation as set forth in Paragraphs "1" through "206" as though fully set forth herein.

208.     As a direct and proximate result of Defendants' negligent, reckless and careless representation which directly caused the conversion of this case and the temporary shutdown of

8220269.2

the Business, the Debtor's Estate had to use existing money on hand to pay the cost and expense

of replacing perishable and expired non-perishable goods which the Debtor's Estate had to dispose

of because of the temporary shutdown in order to have goods in order to reopen,

209.    The use of the money in the Debtor's Estate to pay the cost and expense of replacing

perishable and expired non-perishable goods in order to reopen the Business without having any

corresponding revenues depleted the Debtor's Estate.

210.    The Defendants' negligent, reckless and careless representation, improper legal

advice and Defendants' failure to preserve Debtor's rights to assume the Lease and confirm a Plan

in a timely manner within the respective statutory time period was the direct and proximate cause

of the depletion of money from the Debtor's Estate thereby directly damaging the Debtor's Estate.

211.    By reason of Defendants' negligent, reckless and careless representation, Debtor

was damaged in an amount to be determined at trial.

## AS AND FOR A TENTH CLAIM AGAINST DEFENDANT

212.    Plaintiff repeats and realleges each and every allegation as set forth in Paragraphs

"1" through "211" as though fully set forth herein.

213.    As a direct and proximate result of Defendants' negligent, reckless and careless

representation which directly caused the conversion of this case and the temporary shutdown of

the Business, because the Debtor's Business was shut down for several weeks it had to dispose of

a substantial amount of food and perishable goods that could not be sold, thereby damaging the

Debtor's Estate in an amount to be proven at trial.

214.    The Defendants' negligent, reckless and careless representation, improper legal

advice and Defendants' failure to preserve Debtor's rights to assume the Lease and confirm a Plan

in a timely manner within the respective statutory time period was the direct and proximate cause

8220269.2

of having to dispose of goods which the Business could have otherwise sold to generate revenue for the Debtor's Estate thereby directly damaging the Debtor's Estate.

215. By reason of Defendants' negligent, reckless and careless representation, Debtor was damaged in an amount to be determined at trial.

## AS AND FOR A ELEVENTH CLAIM AGAINST DEFENDANT

216. Plaintiff repeats and realleges each and every allegation as set forth in Paragraphs "1" through "215" as though fully set forth herein.

217. The Bankruptcy Code provides for chapter 7 trustees to receive compensation for the trustee's services calculated upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

218. The compensation for the chapter 7 trustee is paid from a debtor's estate.

219. A debtor in possession is not entitled to compensation based on moneys it disburses or turns over in a case.

220. As a direct and proximate result of Defendants' negligent, reckless and careless representation resulting in the loss of the ability to confirm a plan which directly caused the conversion of this case and the appointment of a chapter 7 trustee, the Debtor's Estate will, to the detriment of its creditors, incur substantial damages in the form of compensation to be paid to the Trustee for all monies disbursed in the case by the Trustee which claim was solely and completely created as a result of the conversion of the Case.

221. The Defendants' negligent, reckless and careless representation, improper legal advice and Defendants' failure to preserve Debtor's rights to assume the Lease and confirm a Plan in a timely manner within the respective statutory time period was the direct and proximate cause of the conversion of the Debtor's case resulting in the appointment of a chapter 7 trustee thereby

8220269.2

incurring substantial liability for the Debtor's Estate for trustee compensation.

222.     By reason of Defendants' negligent, reckless and careless representation, Debtor was damaged in an amount to be determined at trial, but in a current amount of approximately $135,000.00 calculated from moneys disbursed in the case by the Trustee to date plus anticipated distribution of moneys remaining in the Debtor's Estate as of the date of this complaint.

223.     In the event the Trustee collects and disburses additional money after the date of this complaint, additional compensation will be due.

<u>**AS AND FOR AN TWELFTH CLAIM AGAINST DEFENDANT**</u>

224.     Plaintiff repeats and realleges each and every allegation as set forth in Paragraphs "1" through "223" as though fully set forth herein.

225.     At all relevant times, the Defendants lacked the legal skill and knowledge to file and prosecute a chapter 11 case for a commercial business.

226.     Kaylie admitted during the case that the Debtor's case was the first time she had filed a chapter 11 case for a debtor.  Kaylie 01.05.2024 Tr. 28:5-7.

227.     When asked during the Kaylie Examination whether she had "ever filed a disclosure statement and proposed plan for a small business Chapter 11?", Kaylie admitted "No. This was the only small business Chapter 11 that I had done at that time."  Kaylie 01.05.2024 Tr. 218:15-20.

228.     When asked during the Kaylie Examination whether she had "experience in preparing Chapter 11 plans of reorganization for debtors?", Kaylie admitted "Prior to this, no." Kaylie 01.05.2024 Tr. 62:18-20.

229.     The Defendants prepared the Debtor's schedules of assets and liabilities and Statement of Financial Affairs.

31

230.     The Defendants had previously worked with the Debtor in amending certain of the Debtor's schedules and Statement of Financial Affairs on September 30, 2021 [ECF Doc. No. 20], with other amendments made on August 24, 2022 [ECF Doc. No. 90].

231.     Notwithstanding those two prior amendments, on October 1, 2022, the Debtor filed yet again substantially amended schedules of assets and liabilities and Statement of Financial Affairs which included more than sixty (60) amendments [ECF Doc. No. 116] (collectively, the "Amended Schedules/SOFA"), with a highly detailed description of most if not all of such extensive amendments filed on October 4, 2022 [ECF Doc. No. 117] (the "Statement for Amended Schedules/SOFA.

232.     The Amended Schedules/SOFA were prepared with the assistance of the Morgan Firm which had "determined that the schedules, statement of financial affairs, and statement of equity security holders needed to be reviewed in their entirety." *See* Statement for Amended Schedules/SOFA n. 1.

233.     The Defendants negligently, recklessly and carelessly failed to assume the Lease by the Assumption/Rejection Deadline.

234.     The Defendants negligently, recklessly and carelessly failed to raise the Integrated Transaction Theory prior to the Assumption/Rejection Deadline.

235.     The Defendants negligently, recklessly and carelessly failed to extend the Third Plan Confirmation Extension Deadline.

236.     The ordinary reasonable skill and knowledge as a member of the legal profession providing legal counsel in chapter 11 bankruptcy cases include knowledge of the proper manner in which to obtain from the debtor and present to the creditors and the Court required information for, among other things, a debtor's schedules of assets and liabilities and Statement of Financial

Affairs, as well as important deadlines, including, but not limited to, the deadline by which executory contracts and unexpired leases must be assumed or rejected and the deadline by which a plan must be confirmed in a small business case.

237. Defendants failed to use the ordinary reasonable skill and knowledge as a member of the legal profession because they attempted to engage in an area of law, i.e., chapter 11 bankruptcy law, in which they had unreasonably low skill and knowledge.

238. The Defendants' lack of legal skill and knowledge directly resulted in the Debtor having to incur substantial legal fees to amend its schedules and Statement of Financial Affairs multiple times, including substantial amendments more than a year into the Case after the original and two prior sets of amendments were reviewed by the Morgan Firm.

239. The Defendants' negligent, reckless and careless representation, improper legal advice evidenced by the Defendants' lack of legal skill and knowledge was the direct and proximate cause of the Debtor having to amend its schedules and Statement of Financial Affairs multiple times thereby directly damaging the Debtor's Estate.

240. By reason of Defendants' negligent, reckless and careless representation, Debtor was damaged in an amount to be determined at trial.

**AS AND FOR A THIRTEENTH CLAIM AGAINST DEFENDANT**

241. Plaintiff repeats and realleges each and every allegation as set forth in Paragraphs "1" through "240" as though fully set forth herein.

242. Defendants failed to use the ordinary reasonable skill and knowledge as a member of the legal profession because they attempted to engage in an area of law, i.e., chapter 11 bankruptcy law, in which they had unreasonably low skill and knowledge.

243. The Defendants' lack of legal skill and knowledge was the direct and proximate

8220269.2

cause of the conversion of the Debtor's case resulting in the appointment of a chapter 7 trustee thereby incurring substantial liability for the Debtor's Estate for trustee compensation.

244.     By reason of Defendants' lack of legal skill and knowledge, Debtor was damaged in an amount to be determined at trial, but in a current amount of approximately $135,000.00 calculated from moneys disbursed in the case by the Trustee to date plus anticipated distribution of moneys remaining in the Debtor's Estate as of the date of this complaint.

245.     In the event the Trustee collects and disburses additional money after the date of this complaint, additional compensation will be due.

**AS AND FOR A FOURTEENTH CLAIM AGAINST DEFENDANT**

246.     Plaintiff repeats and realleges each and every allegation as set forth in Paragraphs "1" through "245" as though fully set forth herein.

247.     Defendants failed to use the ordinary reasonable skill and knowledge as a member of the legal profession because they attempted to engage in an area of law, i.e., chapter 11 bankruptcy law, in which they had unreasonably low skill and knowledge.

248.     The Defendants' lack of legal skill and knowledge was the direct and proximate cause of the conversion of the Debtor's case and temporary shutdown of the Business resulting in having to dispose of goods which the Business could have otherwise sold to generate revenue for the Debtor's Estate thereby directly damaging the Debtor's Estate.

249.     By reason of Defendants' lack of legal skill and knowledge, Debtor was damaged in an amount to be determined at trial.

**AS AND FOR A FIFTEENTH CLAIM AGAINST DEFENDANT**

250.     Plaintiff repeats and realleges each and every allegation as set forth in Paragraphs "1" through "249" as though fully set forth herein.

8220269.2

251.    Defendants failed to use the ordinary reasonable skill and knowledge as a member of the legal profession because they attempted to engage in an area of law, i.e., chapter 11 bankruptcy law, in which they had unreasonably low skill and knowledge.

252.    The Defendants' lack of legal skill and knowledge was the direct and proximate cause of the conversion of the Debtor's case and the temporary shutdown of the Business resulting in the use of the money in the Debtor's Estate to pay the cost and expense of replacing perishable and expired non-perishable goods in order to reopen the Business without having any corresponding revenues depleting the Debtor's Estate thereby directly damaging the Debtor's Estate.

253.    By reason of Defendants' lack of legal skill and knowledge, Debtor was damaged in an amount to be determined at trial.

## AS AND FOR A SIXTEENTH CLAIM AGAINST DEFENDANT

254.    Plaintiff repeats and realleges each and every allegation as set forth in Paragraphs "1" through "253" as though fully set forth herein.

255.    Defendants failed to use the ordinary reasonable skill and knowledge as a member of the legal profession because they attempted to engage in an area of law, i.e., chapter 11 bankruptcy law, in which they had unreasonably low skill and knowledge.

256.    The Defendants' lack of legal skill and knowledge was the direct and proximate cause of the conversion of the Debtor's case and the temporary shutdown of the Business resulting in the use of the money in the Debtor's Estate to pay the cost and expense of wages and taxes incurred by keeping certain employees employed during the period of time the Business was temporarily shut down without having any corresponding revenues thereby directly damaging the Debtor's Estate.

8220269.2

257. By reason of Defendants' lack of legal skill and knowledge, Debtor was damaged in an amount to be determined at trial.

## AS AND FOR AN SEVENTEENTH CLAIM AGAINST DEFENDANT

258. Plaintiff repeats and realleges each and every allegation as set forth in Paragraphs "1" through "257" as though fully set forth herein.

259. Defendants failed to use the ordinary reasonable skill and knowledge as a member of the legal profession because they attempted to engage in an area of law, i.e., chapter 11 bankruptcy law, in which they had unreasonably low skill and knowledge.

260. The Defendants' lack of legal skill and knowledge was the direct and proximate cause of the conversion of the Debtor's case and the temporary shutdown of the Business resulting in the use of the money in the Debtor's Estate to pay the Pre-Conversion Wages, Pre-Conversion Taxes, Pre-Conversion Goods Debts and other operating costs incurred prior to the Conversion Date without having any corresponding revenues thereby directly damaging the Debtor's Estate.

261. By reason of Defendants' lack of legal skill and knowledge, Debtor was damaged in an amount to be determined at trial.

## AS AND FOR A EIGHTEENTH CLAIM AGAINST DEFENDANT

262. Plaintiff repeats and realleges each and every allegation as set forth in Paragraphs "1" through "261" as though fully set forth herein.

263. The prior course of conduct of the Debtor's principal brought about an action pursuant to the Fair Labor Standards Act (hereinafter referred to as "FLSA"), 29 U.S.C. §§206, 207, and 216(b); New York Labor Law § 190 *et seq.*; New York Labor Law §§ 663 and 650 *et seq.*; New York Labor Law §§ 193 and/or 198-b and 12 New York Codes, Rules, and Regulations (hereinafter referred to as "NYCRR") §§ 146 *et seq.* to recover minimum wages, overtime

36

compensation, spread of hours compensation, unlawful deductions, uniform maintenance pay and damages arising from record-keeping violations owed to various former employees of Debtor (the "Wage Litigation").

264.     That Wage Litigation was commenced prior to the Petition Date and is pending in the United States District Court, Eastern District of New York, *Romero v. Sid Boys Corp. d/b/a Kellogg's Diner et al.*, Case No.: 18cv6583 (ARR)(CLP).

265.     The plaintiffs in the Wage Litigation agreed to a resolution of the claims which as a condition to the settlement, would be part of a confirmed Plan.

266.     The Defendants negligently, recklessly and carelessly failed to raise the Integrated Transaction Theory prior to the Assumption/Rejection Deadline.

267.     The Defendants negligently, recklessly and carelessly failed to extend the Third Plan Confirmation Extension Deadline.

268.     Defendants failed to use the ordinary reasonable skill and knowledge as a member of the legal profession because they attempted to engage in an area of law, i.e., chapter 11 bankruptcy law, in which they had unreasonably low skill and knowledge.

269.     The Defendants' lack of legal skill and knowledge was the direct and proximate cause of the conversion of the Debtor's case and losing the ability to confirm a plan which prevented the Debtor from resolving the Wage Litigation.

270.     By reason of the foregoing, Debtor was damaged by Defendants' course of conduct in an amount to be determined at trial but believed to be not less than Seven Hundred Fifty Thousand ($750,000.00) Dollars.

## AS AND FOR A NINETEENTH CLAIM AGAINST DEFENDANTS

271.     Plaintiff repeats and realleges each and every allegation as set forth in Paragraphs

8220269.2

"1" through "270" as though fully set forth herein.

272.     Upon information and belief, the Defendants drew down on the Retainer prior to the Petition Date in an amount of $6,725.00 (the "Drawdown").

273.     Upon information and belief, the Drawdown was applied to amounts billed to and owed by the Debtor for services rendered and/or expenses incurred on behalf of the Debtor prior to the Petition Date.

274.     At all times relevant, the services provided by the Defendants to the Debtor were below the standards exhibited by members of the legal profession providing legal services based on ordinary reasonable skill and knowledge.

275.     At all times relevant, the reasonable value of the services provided by the Defendants to the Debtor was zero.

276.     The Drawdown exceeds the reasonable value of the services Defendants did provide to the Debtor.

277.     The Drawdown was excessive.

278.     The Retainer came from the Debtor's funds.

279.     After the Drawdown, as of the Petition Date the Defendants retained, were holding and continue to hold $21,275.00 (the "Residual Retainer") of the Retainer.

280.     The Residual Retainer is property of the Debtor's estate.

281.     If the Drawdown had not been drawn down and applied by the Defendants, it would have been property of the Debtor's estate as of the Petition Date.

282.     As a result of the foregoing, the Trustee demands that the full amount of the Drawdown be returned to or paid over to the Debtor's Estate.

## AS AND FOR A TWENTIETH CLAIM AGAINST DEFENDANT

8220269.2

283.     Plaintiff repeats and realleges each and every allegation as set forth in Paragraphs "1" through "282" as though fully set forth herein.

284.     As a result of the services provided by the Defendants to the Debtor being below the standards exhibited by members of the legal profession providing legal services based on ordinary reasonable skill and knowledge, the Engagement Letter should be cancelled as if it never existed.

285.     As a result of the foregoing, the Trustee demands that the full amount of the Residual Retainer be delivered to the Debtor's Estate.

**WHEREFORE**, it is respectfully requested that judgment be entered in favor of Plaintiff and against Defendants as follows:

(1)     On the first cause of action, in an amount to be determined at trial; together with interest, plus costs, penalties and disgorgement of legal fees paid to Defendants;

(2)     On the second cause of action, in an amount to be determined at trial, but in no event less than $150,000.00; together with interest, plus costs, penalties and disgorgement of legal fees paid to Defendants;

(3)     On the third cause of action, in an amount to be determined at trial; together with interest, plus costs, penalties and disgorgement of legal fees paid to Defendants;

(4)     On the fourth cause of action, in an amount to be determined at trial; together with interest, plus costs, penalties and disgorgement of legal fees paid to Defendants;

(5)     On the fifth cause of action, in an amount to be determined at trial; together

8220269.2

with interest, plus costs, penalties and disgorgement of legal fees paid to Defendants;

(6)     On the sixth cause of action, in an amount to be determined at trial; together with interest, plus costs, penalties and disgorgement of legal fees paid to Defendants;

(7)     On the seventh cause of action, in an amount to be determined at trial; together with interest, plus costs, penalties and disgorgement of legal fees paid to Defendants;

(8)     On the eighth cause of action, in an amount to be determined at trial; together with interest, plus costs, penalties and disgorgement of legal fees paid to Defendants;

(9)     On the ninth cause of action, in an amount to be determined at trial; together with interest, plus costs, penalties and disgorgement of legal fees paid to Defendants;

(10)    On the tenth cause of action, in an amount to be determined at trial, together with interest, plus costs, penalties and disgorgement of legal fees paid to Defendants;

(11)    On the eleventh cause of action, in an amount to be determined at trial, but in a current amount of approximately $135,000.00; together with interest, plus costs, penalties and disgorgement of legal fees paid to Defendants;

(12)    On the twelfth cause of action, in an amount to be determined at trial; together with interest, plus costs, penalties and disgorgement of legal fees paid to Defendants;

8220269.2

(13)     On the thirteenth cause of action, in an amount to be determined at trial; together with interest, plus costs, penalties and disgorgement of legal fees paid to Defendants;

(14)     On the fourteenth cause of action, in an amount to be determined at trial; together with interest, plus costs, penalties and disgorgement of legal fees paid to Defendants;

(15)     On the fifteenth cause of action, in an amount to be determined at trial; together with interest, plus costs, penalties and disgorgement of legal fees paid to Defendants;

(16)     On the sixteenth cause of action, in an amount to be determined at trial; together with interest, plus costs, penalties and disgorgement of legal fees paid to Defendants;

(17)     On the seventeenth cause of action, in an amount to be determined at trial; together with interest, plus costs, penalties and disgorgement of legal fees paid to Defendants;

(18)     On the eighteenth cause of action, in an amount to be determined at trial but in no event less than $750,000.00; together with interest, plus costs, penalties and disgorgement of legal fees paid to Defendants;

(19)     On the nineteenth cause of action, in an amount to be determined at trial, but in no event less than $6,725.00; together with interest, plus costs, penalties and disgorgement of legal fees paid to Defendants; and

(20)     On the twentieth cause of action, in an amount to be determined at trial, but in no event less than $21,275.00; together with interest, plus costs, penalties

8220269.2

and disgorgement of legal fees paid to Defendants; and

(21)     For such other, further and different relief the Court deems just, proper and

equitable.

Dated:  East Meadow, New York
        January 31, 2024

                            **CERTILMAN BALIN ADLER & HYMAN, LLP**
                            Attorneys for Richard J. McCord as
                            Chapter 7 Trustee for the Estate of
                            Sid Boys Corp. d/b/a Kellogg's Diner


                    By:      /s/Robert D. Nosek
                            **RICHARD J. MCCORD, ESQ.**
                            **Robert D. Nosek, Esq.**
                            90 Merrick Avenue, 9th Floor
                            East Meadow, New York 11554
                            (516) 296-7000

8220269.2